NOT FOR PUBLICATION

| UNITED STATES BANKRUPTCY COURT DISTRICT OF NEW JERSEY<br>**Caption in Compliance with D.N.J. LBR 9004-1(b)** | Case No. 25-23144 (MBK) |
|---|---|
| In Re:<br>    Edith Farina,<br>              Debtor | Adv. Pro. No. 26-01002 (MBK)<br><br>Hearing Date: June 25, 2026<br><br>Chapter 13<br><br>Judge:  Michael B. Kaplan |
| Edith Farina<br>v.<br>New Rez LLC d/b/a Shellpoint Mortgage Servicing, et al. | |

**MEMORANDUM OPINION**

This matter comes before the Court on several motions filed by Debtor Edith M. Farina ("Debtor"): a Motion to Vacate Dismissal (ECF No. 28 in Case No. 25-23144)[1] seeking reinstatement of her Chapter 13 case and related adversary proceeding and other relief (the "Omnibus Motion"); and two nearly identical motions filed in the closed adversary proceeding— one styled as a Motion to Vacate Dismissal, and the other as a Motion to Reopen (ECF Nos. 13 & 14, respectively, in Adv. Pro. No. 26-01002). As all motions raise the same arguments and relate to the same underlying facts, the Court will address them together in this Opinion.

This is the second Chapter 13 filing by this Debtor arising out of the same long-running mortgage dispute over the property at 35 Mahlon Court, Toms River, NJ. The 2024 proceeding,

---

[1] All docket numbers ("ECF No.") refer to filings in the instant bankruptcy case, Case No. 25-23144, unless otherwise indicated.

Case No. 24-17517 (MBK), was dismissed on March 17, 2025, after the Court denied two motions to vacate and declined to entertain a third round of motions seeking certification, judicial notice, and vacatur. *Mem. Decision* dated Nov. 24, 2025, ECF No. 117 in Case No. 24-17517 (the "November 2025 Opinion"). The Court's prior rulings unambiguously rested on: (i) Debtor's failure to put a confirmable plan before the Court eight months into the case; and (ii) the Court's stated inclination to permissively abstain under 28 U.S.C. § 1334(c)(1) in favor of the pending state-court foreclosure proceedings (F-024744-18) and the already-decided District Court/Third Circuit litigation and appeals challenging the standing of New Rez LLC d/b/a Shellpoint Mortgage Servicing, The Bank of New York Mellon, and MERS (collectively, "Secured Creditors" or "BNYM").

The current (second) Chapter 13 case was filed December 12, 2025, and dismissed February 19, 2026.  The companion adversary proceeding, Adv. Proc. No. 26-01002 (MBK), was dismissed March 26, 2026, following dismissal of the main case.  On March 27, 2026, Judge Vincent J. Grasso, J.S.C. (ret. on recall), reinstated his prior December 15, 2025, Opinion and Orders in the state foreclosure action and directed entry of final judgment.

Debtor now moves under FED. R. CIV. P. 60(b)(l), (3), (4), and (6) (incorporated by FED. R. BANKR. P. 9024) seeking to:

1. Vacate the February 19, 2026 dismissal of the main case as void.
2. Reopen the adversary proceeding.
3. Reinstate the automatic stay.
4. Compel Rule 7052 findings of fact regarding the prior case dismissals; and
5. Compel the Chapter 13 Standing Trustee to produce evidence of investigation and service.

The Secured Creditors oppose all such relief and request: (i) denial with prejudice; and (ii) a bar to refiling of at least 180 days under 11 U.S.C. §§ 105(a) and 349(a).

The Court has carefully reviewed the parties' written submissions, the adversary docket, the docket of the underlying Chapter 13 case, the transcript of the March 27, 2026 hearing before Judge Vincent J. Grasso, J.S.C. (ret. on recall) in the Ocean County Superior Court (submitted by Debtor as Exhibit A), the state court's Opinion and Orders of December 15, 2025 (reinstated March 27, 2026), and this Court's November 2025 Opinion, entered in the Debtor's prior Chapter 13 case (ECF No. 117 in Case No. 24-17517). The Debtor waived oral argument with respect to the hearing scheduled for June 25, 2026.  The Court now renders its ruling.  For the reasons that follow, the Court will DENY WITH PREJUDICE the Omnibus Motion in its entirety and grant the Secured Creditors' requested cross-relief.   The Court will likewise DENY WITH PREJUDICE the motions in the adversary proceeding. Additionally, as explained, the Court intends to issue an Order to Show Cause as to why sanctions should not be imposed against Debtor, individually, and her counsel, Eric Landau, Esq. ("Counsel").

## I.       Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012 and June 6, 2025, referring all bankruptcy cases to the bankruptcy court. These matters are core proceedings within the meaning of 28 U.S.C. § 157(b)(2)(A), (L) and (O). Venue is proper in this Court pursuant to 28 U.S.C. §1408.  The following constitutes the Court's findings of fact pursuant to FED. R. BANKR. P. 7052.[2]

---

[2] To the extent that any of the findings of fact might constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

## II.    Background and Procedural History

The Court incorporates by reference the extensive procedural history set forth in its November 2025 Opinion in the Debtor's prior case. *See November 2025 Opinion* 2-9, ECF No. 117 in Case No. 24-17517.  The Court adds the following: On December 12, 2025, three days before the state court was to rule on the final group of defense motions in the foreclosure, the Debtor filed her second Chapter 13 petition.  Thereafter, the § 341 meeting was scheduled for January 15, 2026, and rescheduled to January 29, 2026.  On February 4, 2026, counsel for BNYM filed an Objection to Confirmation (ECF No. 21) of Debtor's proposed plan.  The objection acknowledged that BNYM had not yet filed a proof of claim, that the bar date was February 20, 2026, and that the plan provided for no payment toward BNYM's claimed arrearage of $746,306.57.  On February 11, 2026, the confirmation hearing proceeded. Neither the Debtor nor her counsel appeared. The Court dismissed the case for:

1.    Failure to appear at the § 341(a) meeting;
2.    Failure to provide required documents to the Trustee;
3.    Lack of prosecution; and
4.    Failure to attend the confirmation hearing.

The Order of Dismissal (ECF No. 22) was entered on February 19, 2026.

Prior to dismissal of the underlying Chapter 13 case, on January 5, 2026, the Debtor filed an adversary complaint (Adv. Pro. No. 26-01002, the "Adversary Complaint") against New Rez LLC d/b/a Shellpoint ("New Rez"), BNYM and MERS, seeking a declaratory judgment and challenging the validity of the lien and chain of title—claims identical to those that had been litigated and rejected in the state court, the District Court, and the Third Circuit.  New Rez filed an Answer on February 3, 2026 (ECF No. 3 in Adv. Pro. No. 26-01002).  BNYM and MERS did not answer.  A pre-trial hearing was held on March 9, 2026, at which the Court directed submission of a joint scheduling order.  On March 24, 2026, the Debtor requested a clerk's entry of default

against BNYM and MERS.  On March 26, 2026, at 8:49 a.m., the Clerk entered default.  Later that same day, the Clerk annotated the default entry with the notation "**PLEASE DISREGARD. ADVERSARY PROCEEDING WILL BE DISMISSED IN LIGHT OF DISMISSAL OF UNDERLYING BANKRUPTCY CASE**" and entered an Order Dismissing the Adversary Case (ECF No. 8 in Adv. Pro. No. 26-01002).  An amended minute entry was also added to reflect dismissal, entered on March 26, 2026, with a reference to the March 9, 2026, hearing.

On March 27, 2026, Judge Grasso held a hearing in the foreclosure action.  On the record, Judge Grasso stated that his law clerk had contacted this Court's law clerk and obtained the adversary dismissal order and the bankruptcy dismissal order. *Tr. Of March 27, 2026 Hrg.* 5:15-18 (*Exhibit A to Omnibus Motion*), ECF No. 28.  Based on those orders—as well as Mr. Emilio Farina's withdrawal of his pending emergency motion the day before—the state court reinstated its December 15, 2025 Opinion and Orders in full and directed the matter to proceed to final judgment and writ of execution.

### III.    The Debtor's Arguments and the Court's Rulings

The Debtor advances seven principal grounds for her requested relief. All are lacking in merit and the Court addresses each in turn.

#### A. Failure to Issue Rule 7052 Findings

The Debtor contends that the Court's dismissal of the Chapter 13 case and the adversary proceeding without issuing "mandatory" findings of fact and conclusions of law under FED. R. BANKR. P. 7052 rendered both dismissals void as a matter of law.  This argument is undeveloped in Debtor's Memorandum of Law, and it is unclear what additional findings of fact and conclusions of law—beyond the bases for dismissal provided in the Order of Dismissal—she believes were required.  The Court fully and completely complied with all applicable rules and

requirements; and the grounds for dismissal of Debtor's case—failure to appear at the § 341 meeting, failure to provide documents, failure to attend the confirmation hearing, and lack of prosecution—are clearly delineated in the Order of Dismissal (ECF No. 22).  Cases are routinely dismissed for administrative reasons such as these, and bankruptcy courts have discretion to do so. *See* 11 U.S.C. § 1307(c).  At the confirmation hearing in this case, the Court determined that dismissal was warranted, and memorialized its bases for dismissal in its ruling.  Nothing in the procedural history of this case reflects a deviation from standard practice, and nothing in the Order of Dismissal suggests a deficiency in this Court's explanation for its actions.  Simply put, this Court is fully authorized to address administrative and procedural failures at a confirmation hearing or at any status hearing, and may dismiss cases on those bases and without additional formal findings.[3]  It did so here, and no further findings are warranted.

Moreover, Debtor's brief statements regarding Rule 7052 are legally incorrect and reflect a misunderstanding of applicable rules.  Rule 7052 incorporates FED. R. CIV. P. 52(a), which requires findings of fact and conclusions of law in contested adversary proceedings tried on the merits. *See* FED. R. BANKR. P. 7052; FED. R. CIV. P. 52(a)(1).  While, under Bankruptcy Rules 9014 and 1017(d), Rule 52(a) is applicable in contested proceedings—such as a motion to dismiss or convert a Chapter 13 case—the Court, here, was not presented with such a motion.  Instead,

---

[3] Indeed, written and reported decisions addressing dismissals based on procedural or administrative failings are limited precisely because such dismissals do not require detailed findings beyond identification of the administrative failings themselves. Nevertheless, the Court identified several cases that, in the context of addressing other substantive issues, recognized prior dismissals for the same reasons underpinning dismissal of the Debtor's case in the instant bankruptcy matter. *See, e.g., In re Napier-Lopez*, No. 23-10694, 2023 WL 3260150, at *6 (Bankr. D.N.J. May 4, 2023) (noting that case was dismissed because—among other things—debtor failed to attend the section 341(a) meeting, make all required pre-confirmation payments, and no plan was confirmed); *In re Eyde*, No. 21-17330, 2022 WL 412096, at *3 (Bankr. D.N.J. Feb. 10, 2022) (observing that case was previously dismissed—several times—for debtor's failure to attend the section 341(a) hearing, make required preconfirmation payments to the trustee, and attend the confirmation hearing); *In re Hackler*, 588 B.R. 394, 400 n.1 (D.N.J. 2018), *aff'd sub nom. In re Hackler & Stelzle-Hackler*, 938 F.3d 473 (3d Cir. 2019) (noting that debtor's initial Chapter 13 filing was dismissed for failing to attend a Section 341(a) meeting).
.

this Chapter 13 case was dismissed at the confirmation stage due to administrative and procedural failures.   Therefore, this Court perceives no reason to adhere to the formal requirement of providing separate of findings of fact and conclusions of law. *See, e.g.*, *PharMethod, Inc. v. Caserta*, 382 F. App'x 214, 217 (3d Cir. 2010) (citing *Hazeltine Corp. v. Gen. Motors Corp.*, 131 F.2d 34, 37 (3d Cir. 1942) (finding no basis for reversal where "the opinion of the trial judge afforded a clear understanding of the basis of the decision below")).  In any event, it is clear from the advisory committee notes to Rule 52, and from the myriad of case law interpreting the Rule, that its purpose is to create a clear and understandable record for any future appellate review. *See, e.g.*, *In re Blaise*, 219 B.R. 946, 948 (B.A.P. 2d Cir. 1998) ("The purpose of Rule 52(a) is 'to aid the appellate court by affording it a clear understanding of the ground or the basis of the decision of the trial court.'") (quoting *Leighton v. One William St. Fund, Inc.*, 343 F.2d 565, 567 (2d Cir. 1965)).  Here, the basis for dismissal is clearly articulated and easily reviewable by any appellate court.

As for the adversary proceeding, it was not tried on the merits.  As explained in the Order Dismissing Adversary Case (ECF No. 8 in Adv. Pro. No. 26-01002), the Adversary Complaint was dismissed because the underlying bankruptcy case had been dismissed, depriving the proceeding of its jurisdictional predicate.  No trial occurred.  No merits were adjudicated.  Rule 7052 is inapplicable.

In sum, the absence of Rule 7052 findings does not render either order void.

### B.  Violation of § 1307(c) - Dismissal Without "Notice and a Hearing"

Debtor argues that dismissal of the Chapter 13 case was entered without "notice and a hearing" as required by § 1307(c).  The Debtor contends that the rescheduled § 341 meeting date was never noticed to her or her Counsel, and that the confirmation hearing could not serve as the

dismissal hearing because the only plan objection was filed by a party (BNYM) that had not filed a proof of claim. As with all of Debtor's arguments, the Debtor's position lacks legal and factual support.

As an initial matter, the Court acknowledges that the Bankruptcy Code requires "notice and a hearing" before dismissal under § 1307(c)—but this phrase is defined expansively in 11 U.S.C. § 102(1). It means "such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." *Id*. A confirmation hearing at which the debtor has been noticed and given the opportunity to appear satisfies this requirement. Here, the confirmation hearing was scheduled for February 11, 2026, and the docket reflects proper and timely notice of that hearing. Debtor's Counsel is a registered e-filer and he automatically receives electronic notification of filings in cases in which he is counsel of record. Thus, in addition to the Statement Adjourning 341(a) Meeting of Creditors appearing on the docket, notice of this adjournment was sent electronically to the email address on file, which Counsel input himself.[4]

Further, the record reflects that Debtor was provided with ample notice that, if her plan was not confirmed, the case was subject to dismissal. This information was explicitly provided— in bold—in the Notice of Hearing on Confirmation of Plan. *Notice of Confirmation Hearing*, ECF No. 13 ("**If, at the confirmation hearing, it is determined that the debtor's plan is not confirmable, the case may be dismissed or converted.**") (emphasis in original). This language is included (and highlighted in bold) in every Notice of Hearing on Confirmation of Plan—a fact that was expressly pointed out to Debtor in this Court's November 2025 Opinion in response to

---

[4] The Court's electronic receipt confirms that it the notice was electronically mailed to Debtor's Counsel at 8:41a.m. on January 5, 2026.

a due process argument raised by Debtor in her first bankruptcy case. *See November 2025 Opinion* 12 n.8, ECF No. 117 in Case No. 24-17517.  Finally, the Court notes that BNYM's Objection to Confirmation specifically requested dismissal. *Obj. by BNYM* ¶16, ECF No. 21.  Given the record, it strains credulity that Debtor legitimately asserts she had no "notice that the bankruptcy even had a chance of being dismissed on 2/11/26." *Omnibus Mot.* 11, ECF No. 28.

Moreover, the Debtor's contention that the rescheduled § 341 meeting date was not properly noticed—even if accepted as true for argument's sake[5]—does not render the dismissal void.  As discussed, the dismissal rested on four independent grounds, including failure to attend the confirmation hearing and lack of prosecution; neither of which depends on whether the Debtor received notice of the rescheduled § 341 meeting.

As for the argument that BNYM's objection to confirmation was improper because BNYM had not filed a proof of claim, the Debtor is whistling past the graveyard.  The Debtor bore the burden of proposing a confirmable plan. *See, e.g.*, *In re Campbell*, 598 B.R. 775, 782 (Bankr. M.D. Pa. 2019), *aff'd sub nom. Campbell v. Conway*, 611 B.R. 38 (M.D. Pa. 2020) (explaining that—although burden of production at Chapter 13 plan confirmation hearing can shift—the debtor, as plan proponent, always bears ultimate burden of persuasion on confirmability of plan).  The plan failed to address a $746,306.57 arrearage on the first-priority mortgage lien.  Whether or not BNYM's objection is considered, the plan was facially unconfirmable under 11 U.S.C. § 1325(a)(5).  The Court may deny confirmation *sua sponte* and dismiss the case when the plan is not in a position to be confirmed. *See, e.g. In re Vincente*, 257 B.R. 168 (Bankr. E.D. Pa. 2001) (explaining that a bankruptcy court has an independent duty to

---

[5] The record belies this contention: the Statement Adjourning 341(a) Meeting of Creditors filed by Albert Russo is plainly visible on the public docket, and the Court's electronic receipt confirms that this information was electronically mailed to Debtor's Counsel at 3:20p.m. on January 5, 2026.

determine whether amended Chapter 13 plan is confirmable and stating that a bankruptcy court may address *sua sponte* deficiencies in a plan without regard to the pendency of an objection) (citing *In re Szostek*, 886 F.2d 1405, 1410–14 (3d Cir. 1989) and *In re Fricker*, 116 B.R. 431, 436 (Bankr. E.D. Pa. 1990)). Indeed, the United States Supreme Court, in *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010) directs such a result. Counsel's contention that the plan "should have been considered unobjected to, and been confirmed, even without debtor's attorney present," *Omnibus Mot.* 10-11, ECF No. 28, reflects a deep misunderstanding of court procedure, applicable law, and his responsibilities as an officer of the court.

### C. "Legal Stranger" Without a Proof of Claim

Incredibly, Debtor contends that BNYM's failure to file a proof of claim by the bar date results in BNYM being merely a "debt collector," not a "secured creditor," without standing in this case to be heard on any matter affecting the estate. This argument reflects a fundamental misunderstanding of bankruptcy law. A secured creditor's lien survives bankruptcy regardless of whether a proof of claim is filed. *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991) (explaining that "a creditor's right to foreclose on the mortgage survives or passes through the bankruptcy") (citing *Long v. Bullard*, 117 U.S. 617, 620–21, 6 S. Ct. 917, 29 L.Ed. 1004 (1886)). The Third Circuit has confirmed that a secured creditor is not required to file a proof of claim to protect its lien or to object to confirmation of a plan that improperly treats its secured claim. *In re Mansaray-Ruffin*, 530 F.3d 230, 236 (3d Cir. 2008). Moreover, in the instant case, the bar date for filing proofs of claim was February 20, 2026. The case was dismissed on February 19, 2026. BNYM cannot be faulted for failing to file a proof of claim by a deadline that passed after the case had been dismissed. The characterization of BNYM as a "legal stranger" or "debt collector" is squarely contrary to the findings of four separate federal and state courts which have held that

BNYM is the lawful holder of the note endorsed in blank and the valid assignee of the mortgage.[6]

This Court declines to serve as a fifth forum for the same argument.

### D. The Clerk's Entry of Default in the Adversary Proceeding and Application of *Katchen v. Landy*

With an argument that should embarrass Debtor's Counsel, he suggests that the Clerk's entry of default against BNYM and MERS on March 26, 2026, in the adversary proceeding constituted a binding adjudication of all issues raised in the complaint. Pointing to the U.S. Supreme Court's decision in *Katchen v. Landy*, 382 U.S. 323 (1966), Debtor contends that this default constitutes *res judicata* from the moment of its entry. This argument fails on multiple levels: procedural, jurisdictional, and substantive.

### 1.  A Clerk's Entry of Default Is Not a Default Judgment

There is a critical distinction between a clerk's entry of default under FED. R. CIV. P. 55(a) (incorporated by FED. R. BANKR. P. 7055(a)) and a default judgment under Rule 55(b). The former is a ministerial notation reflecting the failure of a party to plead or otherwise defend; the latter requires judicial action and—except with regard to limited exceptions not applicable here— may only be entered by the Court. *See* 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE §§ 2682, 2864 (4th ed.). A clerk's entry of default does not adjudicate liability, does not establish facts, does not constitute *res judicata*, and is freely set aside for good cause under Rule 55(c). *See, e.g.*, *HEI Invs., LLC v. Black Diamond Cap. Appreciation Fund, LP*, No. CV 15-746, 2016 WL 952338, at *3 (D.N.J. Mar. 14, 2016) (explaining that clerk's entry of default does not mean that judgment has been entered against defendants); *Paris v. Pennsauken Sch. Dist.*, No.

---

[6] A thorough discussion on those federal and state court rulings is provided in this Court's November 2025 Opinion and will not be repeated here. *November 2025 Opinion* 2-5, ECF No. 117 in Case No. 24-17517.

CIV. 12-7355, 2013 WL 4047638, at *2 (D.N.J. Aug. 9, 2013) ("After an entry of default is entered pursuant to Rule 55(a), the plaintiff may seek the court's entry of default judgment under either Rule 55(b)(1) or Rule 55(b)(2).") (citing *Nationwide Mut. Ins. Co. v. Starlight Ballroom Dance Club, Inc.,* 175 F. App'x 519, 521 n.1 (3d Cir. 2006) (citing 10A WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2682 (3d ed. 1998))); *see also, e.g., United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194 (3d Cir. 1984) (discussing procedural distinction between clerk's entry of default and motion for default judgment). No motion for default judgment was ever filed, and no final judgment was ever entered. The Debtor's characterization of the clerk's entry of default as a "final adjudication" is legally flawed.

### 2. Jurisdictional Predicate Had Been Extinguished

The underlying Chapter 13 case was dismissed on February 19, 2026. An adversary proceeding in bankruptcy derives its jurisdiction from the bankruptcy case. *See* 28 U.S.C. § 1334(b) (jurisdiction over proceedings "arising in or related to cases under title 11"). When the underlying case was dismissed, the jurisdictional predicate for the adversary was substantially, if not entirely, eliminated—particularly where, as here, the adversary sought to relitigate state-law title and standing issues that were peripheral to the administration of a now-dismissed bankruptcy case. *See, e.g., In re RFE Indus.*, 65 F. App'x 405, 407–08 (3d Cir. 2003) (reiterating the Third Circuit's general rule that "the dismissal of a bankruptcy case should result in the dismissal of 'related proceedings' because the court's jurisdiction of the latter depends, in the first instance, upon the underlying nexus between the underlying bankruptcy case and the related proceedings") (quoting *In re Smith,* 866 F.2d 576, 580 (3d Cir. 1989)). While certain proceedings in the adversary case continued on an administrative basis (the March 9, 2026 pre-trial conference—for which no appearances were required or made—and the direction to submit a joint scheduling

order), that administrative discretion did not, and could not, transform the adversary into a free-standing federal action with independent subject-matter jurisdiction. Dismissal of the adversary proceeding following dismissal of the main case was procedurally appropriate and well within the Court's discretion. *See, e.g. EPIC Educ. Projects & Info. Consultant Ctr., Inc. v. Dwelling House Sav. & Loan Ass'n*, 139 F. App'x 388, 391 (3d Cir. 2005) (noting that, because the Chapter 13 proceedings had been dismissed, the adversary proceeding was properly dismissed because there was no possibility that the action could have any effect on an estate being administered in bankruptcy).

### 3. *Katchen v. Landy* is Neither Relevant, Nor Helpful to the Debtor

The Debtor's reliance on *Katchen v. Landy*, 382 U.S. 323 (1966), is misplaced. In *Katchen*, the Supreme Court held that when a creditor files a proof of claim, the bankruptcy court acquires summary jurisdiction to determine countervailing claims that are "integral to" the claims-allowance process; for example, preference actions that bear directly on whether the claim should be allowed. The Court ruled that the creditor's act of filing a claim constitutes consent to the bankruptcy court's adjudicatory authority over those integrated matters. Nothing in *Katchen*, however, restricts a court from exercising its discretionary power to abstain where appropriate. Of even greater significance, the dispositive factor in *Katchen*—the filing of a proof of claim— is entirely absent here. As Debtor repeatedly points out, BNYM did not file a proof of claim in this case, and thus there could be no claims allowance proceeding and *Katchen's* grant of summary jurisdiction is simply of no import.

### E.  "Clerk-to-Clerk" *Ex Parte* Communication

In an unprincipled and feckless attack on two courts and staff, Debtor's Counsel suggests that Judge Grasso's law clerk's communication with this Court's law clerk on March 26, 2026,

somehow improperly precipitated the dismissal of the adversary proceeding and altered docket entries. Counsel unabashedly characterizes this as a conspiracy against rights under 18 U.S.C. §§ 241, 242; a constitutional tort under 42 U.S.C. § 1983; and a predicate act of racketeering under 18 U.S.C. § 1962.

The Court addresses this allegation directly because of its seriousness. Intergovernmental judicial coordination on the status of related proceedings is routine, proper, and consistent with principles of comity and judicial economy. When a state court has before it a foreclosure action that has been stayed by a bankruptcy filing, and the bankruptcy case has been dismissed, the state court has a legitimate need to ascertain the status of the federal proceeding before acting. A law clerk's inquiry concerning the docket status of a related case and the provision of orders that are, in any event, public documents available on PACER, is not an *ex parte* communication of the kind prohibited by judicial ethics. *See, e.g. Snarr v. United States*, No. 1:13-CV-724, 2023 WL 4237095, at *10 (E.D. Tex. June 28, 2023) (explaining that "[t]he court is not a party to the litigation, nor are the court employees"; therefore, court employees did not engage in any *ex parte* communication); *Brady v. Marks*, 7 F. Supp. 2d 247 (W.D.N.Y. 1998) (explaining that phone call between federal district court judge and attorney for state court judge did not constitute improper *ex parte* communications regarding the merits of movant's case).

The prohibition on *ex parte* communications—as reflected in Canon 3(A)(4) of the Code of Conduct for United States Judges and N.J. Code of Judicial Conduct Rule 3.5—prohibits communications with a judge concerning a pending or impending matter that are made outside the presence of the parties for the purpose of influencing the judge's decision. An administrative inquiry about the docketed status of a related case is categorically different from an attempt to influence judicial decision-making.

To the extent the Debtor's papers suggest that Judge Grasso's law clerk somehow influenced this Court to dismiss the adversary proceeding or vacate the default, Counsel offers no evidence or additional facts which in any way lend support to such an allegation. The Debtor concedes that the docket entries were made by court staff using the initials "(wiq)," which in fact identifies a Deputy Clerk of this Court. The Court's staff acted on administrative grounds—the underlying bankruptcy case had been dismissed five weeks earlier—not pursuant to the direction of a state-court law clerk.

### F. Additions to Docket Entry and Amended Minute

The Debtor's allegation that court staff engaged in "an intentional manipulation [of the docket] meant to mislead anyone reviewing the docket" is even more insulting and reckless. *Omnibus Mot.* 13, ECF No. 28. In this regard, Debtor refers to two well-documented and fully transparent additions to the docket in the adversary proceeding. First, he cites text added to the docket entry for the Entry of Default (ECF No. 7 in Adv. Pro. No. 26-01002). Second, he cites an Amended Minute for the March 9, 2026 pre-trial hearing. To be clear—and as is apparent from the entries themselves—these were not "manipulations" of the docket, or even "changes" to existing entries on the docket. Rather, these were additions to existing docket entries that were fully explained and properly dated.

Ultimately, Debtor's complaints stem from her Counsel's lack of understanding between procedural and substantive actions. Counsel's confusion underlies all arguments raised in the Omnibus Motion but is particularly evident in the arguments regarding the Entry of Default and the Amended Minute. Disappointingly, rather than pursue an explanation through research or inquiry and obtain an accurate understanding, Counsel carelessly casts blame and alleges conspiracy by court staff. While this Court believes the explanation for additions to the docket is

evident in the additions themselves, it takes this opportunity to further clarify and address the serious allegations made by Counsel.

As to the initial outcome of the pretrial conference, Counsel misconstrues its significance. The initial minute outcome for the March 9, 2026 pre-trial hearing was—and remains: "**JOINT SCHEDULING ORDER TO BE SUBMITTED.**"  Counsel incorrectly asserts that this entry "showed the judge was knowingly exercising his discretion to allow the adversary proceeding to continue, even with the underlying bankruptcy dismissed." *Omnibus Mot.* 12, ECF No. 28.  To the contrary, a pretrial hearing is a procedural matter for which appearances are not required so long as a Joint Scheduling Order is submitted.  Not only do the Court's Local Rules explain this, *see* D.N.J. LBR 7016-1, but Counsel was sent an email reminder to this effect on March 3, 2026. Thus, this was an entirely procedural matter that required no hearing, no substantive determinations on the part of the Court, and that was addressed entirely at the administrative level. Indeed, at this point, it would have been appropriate to dismiss the adversary proceeding based on the dismissal of the underlying bankruptcy.  Unfortunately, this was overlooked and the Clerk's Office entered the standard outcome directing the parties to submit a Joint Scheduling Order.  This oversight was later remedied by the Amended Minute, as explained below.

Next—and as previously discussed—the entry of default is an administrative matter handled entirely by the Clerk's Office, not by a judge.  Entry of default is automatic upon certification by a plaintiff that a complaint was properly served and no answer was submitted. *See* FED. R. CIV. P. 55(a).  Counsel filed a request for entry of default on March 24, 2026 (ECF No. 6 in Adv. Pro. No. 26-01002), and the Clerk's Office automatically entered the default on March 26, 2026.  As this was an entirely administrative matter addressed by the Clerk's Office, the entry of default does not reflect, as Counsel alleges, that the judge "exercised his discretion." *Omnibus*

*Mot.* 12, ECF No. 28.  Shortly after the entry of default, it was discovered that the underlying Chapter 13 bankruptcy case had been dismissed on February 19, 2026 and, as corollary, that the adversary proceeding should likewise have been dismissed at that time. *See supra,* Section III.D.2. However, the adversary proceeding had continued unnoticed—without any substantive developments and on an administrative basis only—until after the procedural entry of default on March 26, 2026, at which time it came to the Court's attention that the adversary proceeding had not yet been closed.  This was a procedural oversight on the Court's part, which it sought to remedy immediately by dismissing the adversary proceeding and properly noting the docket.

To this end, the Court entered an Order of Dismissal (ECF No. 8 in Adv. Pro. No. 26-01002) that clearly explained the basis for dismissal, tying it to the dismissal of underlying Chapter 13 bankruptcy case.  Further, the Court *added docket text* to the Entry of Default.  It did not delete text, it did not modify existing text.  Rather, the Court added the following line to the docket entry for the Entry of Default: "***PLEASE DISREGARD. ADVERSARY PROCEEDING WILL BE DISMISSED IN LIGHT OF DISMISSAL OF UNDERLYING BANKRUPTCY CASE *** TEXT/Modified on 3/26/2026."  This additional text is self-explanatory, is properly identified as new text, and includes multiple asterisks and all capital letters to draw attention to it.  It defies reason that Counsel can interpret the addition as underhanded or manipulative.

The Court wished to advise the parties that—in light of the dismissal—they were no longer under any obligation to submit a Joint Scheduling Order.  To accomplish this, the Court entered an Amended Minute for the pre-trial hearing held on March 9, 2026.  Again, the Court did not delete the initial minute—it is still there—nor did it modify any existing text.  Instead, it entered an Amended Minute for the March 9, 2026 hearing explaining: "**ADVERSARY PROCEEDING**

**DISMISSED IN LIGHT OF DISMISSAL OF UNDERLYING BANKRUPTCY CASE**.”

The Amended Minute clearly bears the notation “(Entered: 03/26/2026).”  This reflects a standard

amended minute practice: when the outcome of a hearing changes due to subsequent events, the

amended minute is linked to the original hearing date but bears a transparent entry date.  There is

no deception; the entry date is visible on its face.  Counsel’s assertion that the “vast majority of

readers would not see” the date on which this entry was made because it was “at the very end” is

laughable. *Omnibus Mot.* 14, ECF No. 28.  The entry is remarkably short, and dates for *all entries*

appear at the end.  All parties to litigation—but especially counsel—are expected to read and

understand the docket.

Allegations of judicial conspiracy certainly warrant a measure of circumspection by a

member of the bar and officer of the court.  Counsel has not demonstrated such capacity.

### G.  Trustee’s Alleged Breach of Fiduciary Duty

The Debtor submits that the Standing Chapter 13 Trustee, Albert Russo, breached his

fiduciary duty by (i) failing to investigate the adversary proceeding’s allegations; (ii) accepting

BNYM’s plan objection despite the absence of a proof of claim; and (iii) failing to assert the

Debtor's interests against BNYM.  The Debtor fundamentally mischaracterizes the role and duties

of the Chapter 13 Standing Trustee.  Under 11 U.S.C. § 1302(b)(l), the trustee’s duties include

appearing and being heard at hearings on confirmation, ensuring that the debtor commences plan

payments, and advising the debtor on plan performance.  The trustee is not the debtor’s advocate,

and the trustee is not obligated to litigate the debtor’s affirmative claims against creditors or to

independently investigate the merits of a debtor-initiated adversary proceeding. *See, e.g., In re

Saunders*, 440 B.R. 336, 350 (Bankr. E.D. Pa. 2006) (discussing the scope of trustee duties). The

trustee’s obligation—first and foremost—is to the administration of the estate.  Here, when the

Debtor failed to provide required documents, failed to attend the § 341 meeting, failed to make plan payments, and failed to propose a confirmable plan, it was entirely appropriate (indeed, it was the Trustee's duty and responsibility) to recommend dismissal. The Court declines to order the Trustee to "produce evidence of investigation" or to refer the Trustee for investigation of civil rights violations. There is no basis in the record for either request, and as with Counsel's other allegations of wrongdoing directed at the Court staff, Counsel's misguided approach reflects continued poor judgment and a lack of professionalism.

### IV.    Other Requests for Relief

#### A.  Reinstatement of the Automatic Stay

Because the Court has found no basis to vacate the dismissal of the Chapter 13 case, there is no predicate for reinstatement of the automatic stay. The stay terminated upon dismissal. 11 U.S.C. § 362(c)(2)(B).

#### B.  Debtor's Motion to Reopen the Adversary Proceeding

Reopening a closed case or adversary proceeding requires cause. *See* 11 U.S.C. § 350(b). The Court has broad discretion to determine whether cause exists. *In re Zinchiak*, 406 F.3d 214, 224 (3d Cir. 2005). No cause exists here. The underlying bankruptcy case is dismissed. The adversary complaint sought to relitigate the validity of the MERS assignment and BNYM's standing—issues resolved adversely to the Debtor in the state court, the District Court, and the Third Circuit. Reopening the adversary proceeding would serve no purpose other than to manufacture a federal stay and delay the state-court foreclosure—precisely the forum-shopping strategy this Court identified in its November 2025 Opinion and at the July 16, 2025 hearing. The motion to reopen the adversary proceeding is denied with prejudice.

**C. Secured Creditors' Cross Relief Request for a Bar to Refiling**

Secured Creditors request, pursuant to 11 U.S.C. §§ 105(a) and 349(a), that the Court deny

the Debtor's motions with prejudice and impose a bar to refiling.  Under 11 U.S.C. § 349(a),

dismissal of a case does not prejudice the debtor's right to refile; however, the Court can order

otherwise for cause.  Moreover, § 105(a) empowers the Court to "issue any order, process, or

judgment that is necessary or appropriate to carry out the provisions of this title[,]" including an

injunction against refiling where the debtor has engaged in bad faith or abuse of the bankruptcy

process.  "Accordingly, pursuant to §§ 105(a) and 349(a), bankruptcy courts have the power to

dismiss a bankruptcy case with a bar against further refilings by that debtor if the court determines

that a debtor has abused the bankruptcy process in bad faith." *In re Iredia*, 556 B.R. 691, 699

(Bankr. E.D. Pa. 2016), *aff'd sub nom. Matter of Iredia*, No. BR 15-18450, 2017 WL 1150630

(E.D. Pa. Mar. 28, 2017) (internal quotations and citations omitted).  Courts must look to the

totality of the circumstances to determine bad faith. *See In re Myers*, 491 F.3d 120, 125 (3d Cir.

2007).  Taking into consideration the substantial body of case law addressing this issue, this Court

determines that courts should consider the following, non-exhaustive list of factors before

imposing sanctions for bad faith in the form of a bar to refiling:

- the timing of the petition;
- the debtor's motive in filing the petition (including litigation history and whether the debtor sought to use bankruptcy primarily as a delay tactic or to defeat state court litigation without a reorganization purpose);
- repeated failures to comply with the Code;
- the number of prior filings;
- how the debtor's actions affected creditors; and
- the sincerity of debtor's action and representations (including whether the filing evidences a manipulation of the Code, and whether debtor has regard for his or her duties and responsibilities as a debtor)

*See In re Myers*, 491 F.3d 120; *In re Sun*, 673 B.R. 608, 625 (Bankr. D.N.J. 2025) (collecting cases imposing refiling bar and stating the basis for each).  In the present matter, each of these factors—and, indeed, the totality of the circumstances—supports the imposition of a refiling bar.

The Debtor has had two unsuccessful Chapter 13 petitions in the past two years.  The second was filed on the eve of the state court's ruling on the final defense motions.  The timing of both filings speaks for itself.  The first was filed shortly after BNYM submitted its motion for final judgment (July 23, 2024).  The second was filed three days before the state court was to rule on the last group of defense motions (December 15, 2025).  In neither case did the Debtor propose a viable plan for curing arrears on a first-priority mortgage of nearly $750,000 which has been in default since March 2018—eight years.  The first plan was never in a position to be confirmed.  The second plan proposed $529 per month toward an arrearage that dwarfs that payment by orders of magnitude.  In neither case did the Debtor propose a plan that had any reasonable prospect of confirmation.   The Debtor has made no mortgage payments since 2018 and has never demonstrated the capacity to fund a plan adequate to cure the arrearage.

The litigation history across all tribunals is extraordinary.  In the state court alone: summary judgment granted over opposition; motion for reconsideration denied; motion to enforce and for sanctions denied; three consolidated motions to vacate denied; motion for reconsideration denied; another motion to vacate denied; another motion for reconsideration denied; two appeals filed; recusal motion filed; motion to depose the court filed; stay pending appeal granted and interlocutory appeal dismissed; cross-motion to vacate summary judgment denied; objection to final judgment denied with prejudice; emergency stay motion denied with prejudice; omnibus emergency motion denied with prejudice; order to show cause denied with prejudice. In this Court: two bankruptcy cases, three motions to vacate, motions for judicial notice, certification of

appeal, evidentiary hearing, and the present omnibus motion—each raising the same substantive challenge to BNYM's standing.  The Debtor has never prevailed on the merits in any forum.

BNYM has been unable to consummate a foreclosure on a mortgage in default for over eight years.  The Debtor and co-owner have occupied the property without making any payments during that period, while BNYM has borne expenses on the property.  The prejudice is severe and ongoing.  The Court finds by clear and convincing evidence that both bankruptcy filings were made primarily for the purpose of delaying the state-court foreclosure action, that the Debtor had no genuine intention or ability to propose a confirmable Chapter 13 plan, and that continued serial filings will cause irreparable prejudice to the Secured Creditors.  The Court hereby imposes a bar to refiling under 11 U.S.C. §§ 105(a) and 349(a).  The Debtor, Edith M. Farina, is prohibited from filing any petition under any chapter of the Bankruptcy Code for a period of 180 days from the date of entry of the order memorializing this ruling, without prior leave of this Court upon a showing of changed circumstances and good faith.

### V.      Order to Show Cause

The frivolousness of Counsel's accusations is matched only by their egregiousness.  It is incomprehensible and concerning to this Court that Counsel both put his thoughts into writing and uploaded them to the docket.  The claims are entirely without merit and reflect—at best—a deep misunderstanding of court procedure, applicable law, and how to interpret a docket, and—at worst—an intentional disrespect for the Court and its staff, and of his own responsibilities as an officer of the Court.  Counsel's pleadings

have stretched the limits of this Court's patience, and tested the limits of acceptable

conduct.  By way of example, among other things, Debtor's pleadings:

- Describe the Court's actions as a "profound assault on the sanctity of the American Judicial process," *Omnibus Mot.* 9, ECF No. 28; s*ee also Debtor's Decl.* ¶ 5, ECF No. 13-3 in Adv. Pro. 26-01002;
- Accuse the federal and state law clerks of collusion and RICO violations; specifically, "illegal and unconstitutional obstruction of the administration of justice intended to facilitate the theft of real property," *Omnibus Mot.* 16, ECF No. 28;
- State that the Court staff "clearly meant to confuse any reader;" with respect to the Amended Minute, and describe it as "a blatant misrepresentation and lie, meant to confuse or trick anyone reading the docket now," *Omnibus Mot.* 14, ECF No. 28; *Debtor's Decl.* ¶ 28, ECF No. 13-3 in Adv. Pro. 26-01002;
- Assert that the Chapter 13 Trustee breached his fiduciary duty, acted in bad faith, and colluded with BNYM, *Omnibus Mot.* 2, 11, ECF No. 28; and
- Accuse BNYM of engaging in fraudulent activity, making false assertions, and submitting fraudulent documentation, *id.* at 6, 11.

In addition to tolerating these outlandish insults (and others), the Court, the

Chapter 13 Trustee's Office, and the Secured Creditors have all expended significant time

and resources addressing Debtor's repeated arguments, vexatious filings, and frivolous

requests for relief.  Accordingly, the Court will issue an Order to Show Cause as to why

sanctions should not be imposed against Debtor, individually, and Counsel.

## VI.    Conclusion

For the aforementioned reasons, the Omnibus Motion (ECF No. 28) is **DENIED WITH PREJUDICE**. The Motion to Vacate Dismissal and Motion to Reopen (ECF Nos. 13 & 14, respectively, in Adv. Pro. No. 26-01002) are similarly **DENIED WITH PREJUDICE**.  The Court will enter an appropriate form of Order and a separate Order to Show Cause.

Dated: June 26, 2026

Honorable Michael B. Kaplan
United States Bankruptcy Judge